UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LANCE RICHARDSON, | ) | CASE NO. 5:14-cv-2050 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CHRISTOPHER LAROSE, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the Report and Recommendation of Magistrate Judge Nancy A. Vecchiarelli (Doc. No. 18 ["R&R"]) with respect to this petition for writ of habeas corpus filed under 28 U.S.C. § 2254. The magistrate judge recommends dismissing with respect to grounds two and three, and granting with respect to ground one.[1] Respondent filed objections to the R&R. (Doc. No. 20 ["Obj."].) No opposition to the objections has been filed.[2]

Pursuant to Fed. R. Civ. P. 72(b)(3), the Court has conducted its de novo review of the matters raised in the objections. For the reasons discussed below, the R&R is accepted as to its recommendations relating to grounds two and three, but is rejected as to the recommendation relating to ground one.

---

[1] The R&R mistakenly states in the summary sections at the beginning and end that the recommendation is to dismiss ground one and three and to grant the petition as to ground two.  It is clear from the full text of the R&R, however, that this is a matter of misnumbering. Respondent also detected this error and has objected with the proper understanding that it is ground one that would be granted under the magistrate judge's recommendation.

[2] The Court also notes that the petition itself contains no argument. It makes reference to a non-existent "Exhibit A" that purports to contain the argument. Further, despite being given two extensions of time to file a reply (referred to as a "traverse"), petitioner failed to do so.

# I. BACKGROUND

Petitioner was indicted by a Stark County grand jury on one count each of aggravated robbery (§ 2911.01(A)(3)) and felonious assault (§ 2903.11(A)(1) and/or (A)(2)), based upon the following facts, as set forth by the state court:

> {¶ 2} In December of 2011, Todd Davis placed an ad on Craig's List for a date. A woman named Tiffany responded to his ad and started texting Davis. On January 3, 2012, Tiffany texted Davis wanting to meet him at a bar on the corner of 15th Street and Harrison in Canton.
>
> {¶ 3} Davis went to the bar. Tiffany was not there, so he sat at the bar and drank a few sodas. Eventually Tiffany texted Davis, asking him to pick her up at an address in Canton.
>
> {¶ 4} Davis arrived at the address Tiffany gave him around 10:30 p.m. At her direction, he parked in a public lot near Aultman Hospital. Tiffany was waiting for him. Davis and Tiffany began walking down an alley where there were apartments. Davis assumed that they were walking to Tiffany's apartment.
>
> {¶ 5} A man wearing a hoodie walked up to Tiffany and asked her for a light. He did not have his cigarette with him, and briefly walked away. When he came back, he hit Davis in the head with [a] bottle. While Davis was on the ground, the man kicked him in the face several times, asking for his wallet. At this point, Davis was knocked "totally loo-loo." Tr. 141. Tiffany, whose real name is Maria Likouris, ran away. The man took Davis' cell phone and his wallet. Davis went to Aultman Hospital and was treated for a broken nose and fractured eye socket.
>
> {¶ 6} Detective Gary Cochran of the Canton Police Department was assigned to investigate the case. He learned that appellant's Chase credit card was used at a Speedway gas station near the site of the robbery at 11:03 p.m. Video surveillance tapes showed Likouris and a man wearing a black hoodie using Davis' credit card to make purchases. The credit card was then used at 11:43 p.m. in a Giant Eagle grocery store, along with a Giant Eagle Advantage Card belonging to appellant. Likouris and the man in the hoodie were also spotted holding hands on Wal-Mart video surveillance at 3:32 a.m., using Davis' credit card to attempt to purchase American Express gift cards. While in the store, the pair returned a Wii game for a cash refund, and appellant's name was signed to the receipt.
>
> {¶ 7} The video surveillance tapes were shown to Davis. Davis was "pretty sure" that the woman in the videos was the woman he knew as Tiffany. He

was not sure if the male in the videos was the man who attacked him. Three days later, Davis viewed a photo lineup that included appellant. On a scale of one to five, with one being certain a photo is not of the perpetrator and five being certain that the photo is of the perpetrator, Davis rated the photo of appellant a three and the remaining five photos as ones.

{¶ 8} Det. Cochran interviewed Likouris on February 3, 2012. After waiving her *Miranda* rights, she told Cochran that appellant, who was her boyfriend, set up the meeting with Davis. Appellant asked her for a lighter and the next thing she knew, appellant hit Davis. However, she later told a public defender that appellant attacked Davis in self defense.

*State v. Richardson*, No. 2012CA00166, 2013 WL 2243974, at *1 (Ohio Ct. App. May 20, 2013). These facts are "presumed to be correct[]" absent rebuttal by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Represented by counsel, in July 2012, petitioner moved to suppress Davis's photo lineup identification of petitioner, arguing that it was the product of an impermissibly suggestive method, specifically that it had been tainted by Davis's earlier viewing of surveillance videos of someone using his stolen credit card. (Doc. No. 9 -- Appendix to Answer ["App."] at 1046-49[3] (Ex. 5).) The trial court denied the motion, concluding that the method of identification was neither impermissibly suggestive or unreliable. (*Id.* at 1054-55 (Ex. 7).) This decision was affirmed on appeal, where the court concluded that the identification method was not unduly suggestive and that any question as to its reliability went to the weight, not the admissibility, of the evidence. (*Id.* at 1149-50 (Ex. 19).) It is this failure to suppress the photo lineup identification that forms the basis of ground one of the habeas petition.[4]

---

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

[4] In the state court, the motion also addressed suppression of certain un-Mirandized statements made by petitioner to the investigating detective. This aspect of the motion was granted by the trial judge and is not at issue here.

## II. DISCUSSION

### A. The Standard of Review

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004); *see also* Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to"); LR 72.3(b) (any objecting party shall file "written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections."). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In conducting its de novo review in a habeas context, this Court must be mindful of the requirements of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim−

>　　　　(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>　　　　(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102-03, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment)).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

**B.　　De Novo Review**

Neither party has filed an objection to the recommendation to deny and dismiss the petition as to grounds two and three. The Court has examined the R&R's reasoning with respect to those two grounds and has found that reasoning to be correct. Accordingly, to that extent, the R&R is accepted and adopted.

The R&R recommends granting the petition with respect to ground one because the identification procedure was "akin to the suggestiveness of a one-man show-up." (R&R at 1295, quoting *United States v. De Leon-Quinones*, 588 F.3d 748, 754 (1st Cir. 2009).)[5] The R&R concludes that the state courts improperly collapsed into one step the two-step inquiry required by *Neil v. Biggers*, 409 U.S. 188, 198, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972).

Respondent objects to this recommendation, arguing that the Ohio courts correctly determined that the identification process was the result of good police work, and not an impermissibly suggestive procedure. (Obj. at 1316.)

Respondent specifically objects to three of the R&R's assertions with respect to the content of the record. First, respondent objects to the statement that Detective Cochran, when asking Davis to review the video surveillance tapes, identified the person in the tapes wearing a black hoodie as a "suspect." Respondent cites to testimony from both the suppression hearing and the trial to the effect that Cochran simply asked Davis to "focus" on the person in the hoodie and his companion because they had used Davis's stolen credit card. (Obj. at 1307, citing Supp. Hr'g Tr. [Doc. No. 6-1] at 669; *see also* Trial Tr. [Doc. No. 6-2] at 857.) Second, pointing to Cochran's suppression hearing testimony that he showed Davis surveillance video of the persons using Davis's credit card in order to determine if that was the person who robbed Davis, respondent challenges the R&R's conclusion that the prosecution did not offer any evidence to rebut the suggestion that the identification procedure was impermissibly suggestive. (*Id*. at 1308, citing Supp. Hr'g Tr. at 648.) Finally, respondent opposes the accuracy of the R&R's characterization of the video's "multiple views of [p]etitioner's face, some of which last for

---

[5] Because the petition "does not contain any argument regarding the merits of his grounds for relief[,]" and because petitioner "failed to file a Traverse[,]" (R&R at 1291 n.4), the magistrate judge "relied upon [p]etitioner's state court filings to construe [p]etitioner's arguments in this matter." (*Id.*)

greater than 10 seconds[,]" (*id.*), pointing out that, in most of the images, the person in the hoodie had his hand at least partially covering his face and was otherwise generally obscured by the hoodie itself. Respondent asserts that, taken in total context, it was reasonable for the state court to conclude that the identification procedure was not impermissibly suggestive. To the extent respondent challenges the R&R's record characterizations, the Court agrees that the characterizations are not accurate and adopts the characterizations set forth in the objections. To that extent, the objections are sustained.

Even more importantly, however, respondent challenges the R&R for a failure to apply the proper standard of deference required by AEDPA and for a misapplication of the controlling Supreme Court case governing due process challenges to identification procedures.

Respondent points out that AEDPA "'dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt,'" (Obj. at 1309, quoting *Bell v. Cone*, 543 U.S. 447, 455, 125 S. Ct. 847, 160 L. Ed. 2d 881 (2005)), and that "'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (*Id.*, quoting *Harrington*, *supra*.) Respondent asserts that the R&R fails to afford the proper deference to the state court decisions when it concludes that the state courts did not properly apply *Biggers*, *supra*.

The R&R properly sets forth the law relating to exclusion of identification evidence, as follows:

> The standard for excluding identification evidence requires consideration of two issues: first, whether the identification procedure was unnecessarily suggestive; and, second, if so, whether the identification was nonetheless reliable. *Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005). The party seeking to exclude the identification evidence bears the burden of showing that the procedure was unnecessarily suggestive. *Id.* at 469-70. If the identification procedure was unnecessarily suggestive, a reviewing court must determine

whether the identification was nonetheless reliable by considering the totality of the circumstances, including:

> [(1)] the opportunity of the witness to view the criminal at the time of the crime, [(2)] the witness' degree of attention, [(3)] the accuracy of the witness' prior description of the criminal, [(4)] the level of certainty demonstrated by the witness at the confrontation, and [(5)] the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200. "[R]eliability is the linchpin in determining the admissibility of identification testimony." *Mason v. Brathwaite*, 432 U.S. 98, 114 (1977).

(R&R at 1292.) The R&R then concludes that "the state court decisions regarding the admissibility of Davis's identification constitute objectively unreasonable applications of *Biggers* because the state courts entirely failed to engage in the correct analysis." (*Id.*) Ultimately, the R&R concludes that the state courts, both initially and on appeal, "collapsed the two [*Biggers*] inquiries into one step, and considered only the level of certainty Davis expressed in making the identification[,]" which "under *Biggers*, is relevant to the reliability of the identification rather than the suggestiveness of the procedure[.]" (*Id.* at 1293, 1294.) The gravamen of the R&R's analysis is that "the state … court[s] [both] bypassed the issue of whether the identification procedure was impermissibly suggestive[,]" and "entirely failed to consider the reliability of that identification[.]" (*Id.* at 1294.)

The Court does not accept the R&R's conclusion. The Supreme Court has noted that if "'fairminded jurists could disagree' on the correctness of the state court's decision[,]" *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)), the decision precludes habeas relief. *See also* R&R at 1287. "[E]valuating whether a rule application was unreasonable requires considering the rule's

specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664 (quoted by R&R at 1287).

Despite quoting *Yarborough*, the R&R did not examine whether the *Biggers* rule is general or specific. As correctly pointed out by the respondent, courts that have addressed the question have found the *Biggers* test to be "a general, open-ended test," requiring an "especially deferential[]" review. *Ege v. Warren*, No. 5:11-CV-10573, 2011 WL 6899940, at *18 (E.D. Mich. Nov. 30, 2012) (citing *Yarborough*; *Rock v. Conway*, 470 F. App'x 15, 17 (2d Cir. 2012); *Tilmon v. Warden Winn Corr. Ctr.*, No. 05–2170, 2009 WL 720886, at *6 (W.D. La. Mar. 16, 2009); *Hayes v. Konteh*, No. 3:05CV2958, 2008 WL 596097, at *9 (N.D. Ohio Mar. 4, 2008) (R&R adopted by 2013 WL 210706)); *see also Williams v. Bauman*, 759 F.3d 630, 639 (6th Cir. 2014) (assessing a *Biggers* issue and citing *Yarborough*).

Furthermore, the Court does not agree that the state courts collapsed the *Biggers* analysis into one step. Notably, at the suppression hearing, the trial judge found that the process was not impermissibly suggestive and concluded that Richardson "didn't sweep the doubleheader[,]" (Supp. Hr'g Tr. at 688), an obvious reference to the two-pronged *Biggers* test. The trial judge expressly noted that, because Davis actually failed to identify his attacker in either the surveillance videos or the photo lineup, "if the officer was suggesting something, he didn't suggest it well[.]" (*Id.* at 686.) In the formal order denying the motion, the trial judge ruled that he "[did] not find that the method used to identify the Defendant was impermissibly suggestive or unreliable." (Judgment Entry [Doc. No. 9, Ex. 7] at 1055.)

Moreover, in *Biggers*, the Court stated that "the central question [is] whether under the totality of the circumstances, the identification was reliable *even though the confrontation procedure was suggestive*." *Biggers*, 409 U.S. at 199 (emphasis added) (quotation marks

omitted). Therefore, even if, for sake of argument, one accepts that the surveillance videos were suggestive of the identity of the attacker (which the Court does not accept), it is not a foregone conclusion that the identification must be excluded. The trial court, in denying the suppression motion, expressly noted that Davis's previous exposure to Richardson via the surveillance videos did not "taint[] any subsequent photo identification[]" because "the victim was never able to specifically identify [Richardson] as the culprit." (Judgment Entry [Doc. No. 9] at 1055.) Further, "[t]he victim assigned the number 3 from a 1 to 5 scale as to his confidence level of identifying [Richardson]." (*Id.*) Therefore, the trial court concluded that there was no "substantial likelihood of irreparable misidentification." (*Id.*)

The court of appeals agreed with the trial court that Richardson had not met his burden of showing that the method used was impermissibly suggestive. It noted that Davis (whom it incorrectly referred to as "appellant") "was shown the videotape several days before the photo lineup[] … [and] was unable to identify the man in the videotape as the man who assaulted him[.]" (Opinion [Doc. No. 9, Ex. 19] at 1150.) Even when Davis viewed the photos a few days later, "he was still only able to assign a number of three out of five to his certainty that appellant was the man who assaulted him." (*Id.*) Ultimately, it concluded that "[t]here is nothing in the evidence presented at the suppression hearing to indicate that the identification in the photo lineup was in any way tainted by the videotape." (*Id.*)

In other words, both the trial court and the appeals court concluded, just as the Court in *Biggers*, that the victim's "record for reliability was … a good one, as [he] had previously resisted whatever suggestiveness inhere[d] in [the photo lineup]." *Biggers*, 409 U.S. at 201. "The evidence was properly allowed to go to the jury." *Id.* (footnote omitted).

Thus, the adjudication by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court[.]" 28 U.S.C. § 2254(d)(1).

Accordingly, the Court sustains the objection with respect to ground one and rejects the R&R's conclusion that the habeas petition should be granted as to that ground.

### III. CONCLUSION

For the reasons discussed above, as well as those set forth in the objections, the R&R is accepted in part (as to grounds two and three) and rejected in part (as to ground one). The petition for writ of habeas corpus is denied and this case is dismissed. Further, the Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: July 28, 2016

                                                  **HONORABLE SARA LIOI**
                                                  **UNITED STATES DISTRICT JUDGE**